1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRUCE ALAN MORRISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIV 06-02509 PHX ROS (MEA) |
| ) | |
| DORA SCHRIRO and ) | REPORT AND RECOMMENDATION |
| ARIZONA ATTORNEY GENERAL, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

**TO THE HONORABLE ROSLYN O. SILVER:**

On October 20, 2006, Petitioner filed a *pro se* petition seeking a writ of habeas corpus pursuant to 42 U.S.C. § 2254, challenging his criminal conviction by an Arizona state court. Respondents filed a Response to Petition for Writ of Habeas Corpus ("Response") (Docket No. 14) on March 23, 2007. Petitioner filed a reply to the response on May 14, 2007. See Docket No. 19.

### I Procedural History

In 2000, Petitioner was charged by indictment with five counts of sexual abuse, five counts of molestation of a child, six counts of sexual conduct with a minor, and one count of attempted sexual conduct with a minor, regarding events involving two victims occurring over approximately two years.

Response, Exh. P.  One of the victims recanted her allegations at least once.  Id., Exh. B at 114.  The indictment alleged the crimes were dangerous crimes against children, i.e., that the victims were under 15 years of age when the acts occurred.  Id., Exh. P.

Prior to trial, Petitioner rejected a plea offer which would have provided for a conviction on two counts of attempted sexual conduct with a minor, with a stipulation for a sentence of five to fifteen years imprisonment and lifetime probation. Id., Exh. A at 2-4.  Additionally, after a hearing, the trial court denied a motion to a suppress a taped telephone conversation between Petitioner and one of the victims, which was surreptitiously recorded by the victim's mother and the victim's mother's boyfriend.  Id., Exh. CC.  At the hearing, Petitioner's counsel argued admission of the tape recording violated "the Fourth Amendment to the United States Constitution, as well as Article 2, Section 8, of the Arizona Constitution, which contained a right of privacy and was broader and provided more protection than the Fourth Amendment."  Id., Exh. CC at 4.

Prior to Petitioner's trial the Superior Court also denied defense counsel's motion to exclude expert testimony regarding characteristics of sex offenders and victims of child abuse in the context of "child sexual abuse accommodation syndrome."  Id., Exh. B.  The trial court concluded that, pursuant to Arizona law, a Frye hearing was not required for the admission of expert witness testimony regarding child sexual

abuse accommodation syndrome.   Id.[1]

Both victims testified at Petitioner's trial.   Id.,
Exh. D, Exh. E, Exh. F, Exh. H.  The government also offered the
evidence of an expert witness in the field of child sexual abuse
accommodation syndrome and a forensic examiner.   Id., Exh. D,
Exh. I.   Petitioner testified at his trial.   Id., Exh. J.
Petitioner denied he had ever committed any of the acts alleged.
Id., Exh. J.   Petitioner allowed that he had "played along
somewhat" with one of the girls by engaging in sexual
conversation on the telephone.   Id., Exh. J at 73.   Petitioner
acknowledged he had engaged in sexually explicit conversation
with one of the victims.   Id., Exh. J at  83.

The tape of the telephone conversation between
Petitioner and one of the victims was played by the prosecutor
during closing arguments and the jurors requested the tape
during deliberations and played the tape in the jury room during
deliberations.   Id., Exh. CC at 9-10.

Petitioner was convicted on eight of the counts charged
in the indictment.   Id., Exh. S.  The jury acquitted Petitioner
on four of the counts charged in the indictment, and five of the
counts were dismissed on the government's motion prior to
deliberations.   Id., Exh. S & Exh. Y.  Petitioner filed a motion
for a new trial.   Id., Exh. T & Exh. U.  Petitioner's motion for

---

[1]  Fry v. United States, 293 F. 1023 (D.C. Cir. 1923).
Petitioner also argued Arizona common law required admission of expert
testimony regarding child sexual abuse accommodation syndrome be
accompanied by a jury instruction limiting the use of this evidence,
citing Logerquist v. McVey, 196 Ariz. 470, 480, 1 P.3d 113, 123
(2000).  See Answer, Exh. W.

a new trial argued the exclusion of evidence relative to Petitioner's defense deprived Petitioner of his right to a fair trial, i.e., due process of law.  Id., Exh. T at 5.  Petitioner also asserted the trial court's limitations on his ability to cross-examine the expert witness as to his motive for testifying for the prosecution violated his Sixth Amendment right to confront witnesses against him.  Id., Exh. T at 8.  Additionally, Petitioner maintained he was deprived of his right to due process because the trial court did not declare a mistrial after a prosecution witness offered a hearsay statement regarding uncharged bad acts.  Id., Exh. T at 9.

On August 17, 2001, Petitioner was sentenced to the presumptive term of five years imprisonment on two of the eight counts of conviction, these terms to be served concurrently. Id., Exh. V.  Petitioner was sentenced to a presumptive concurrent term of seventeen years imprisonment on Count 5, presumptive consecutive terms of 20 years imprisonment on Counts 7, 13, 14, and 15, and a consecutive presumptive term of ten years imprisonment on count 17.  Id., Exh. V.  Accordingly, the aggregate term of imprisonment imposed on all counts was 107 years.

Petitioner filed a timely direct appeal of his convictions and sentences.  Id., Exh. O.  Petitioner asserted the trial court erred by admitting the expert testimony regarding child sexual abuse accommodation syndrome without conducting a Frye hearing and without a limiting instruction to the jury regarding the proper use of this testimony.  Id., Exh.

-4-

O.   Petitioner also asserted the trial court erred by restricting the cross-examination of the expert witness with regard to his potential motive or bias for testifying in favor of the prosecution.  _Id._, Exh. O.  Petitioner further alleged the trial court abused its discretion in excluding some evidence "central to [Petitioner's] theory of his defense," including a track from a music CD, a statement of a police officer, a diary kept by one of the victims, and a "thank you" letter written by one of the victims to the other.  _Id._, Exh. O.[2]

Petitioner also argued in his direct appeal that the trial court erred by allowing the tape-recorded telephone conversation between Petitioner and one of the victims to be admitted into evidence, citing both federal and state law.  _Id._, Exh. O.  Petitioner further asserted the trial court erred by

---

[2]

The defense theory in this matter was simple. Specifically, [a victim's father, who was divorced from her mother] had made repeated threats against [Petitioner, who was romantically involved with the victim's mother], and had turned him into CPS numerous times, all without result.  Armed with a single tape of [Petitioner] making foolish statements to his daughter's best friend [the other victim], [the father] made a "mountain out of molehill," (sic) or, more precisely, made seventeen felonies (the initial indictment in this matter) out of a single misdemeanor (contributing to the delinquency of a minor, [Petitioner's] only offense).

Response, Exh. O at 2.  Petitioner sought to introduce evidence that the victim's father had previously accused other men of sexually abusing his daughter, and evidence that the two victims had previously "conspired" to take pictures of themselves flirting with a different adult male.  _Id._, Exh. O & Exh. CC.  Petitioner also sought to introduce evidence that Petitioner and one of the victims were reciting song lyrics, rather than describing actual events, during the surreptitiously-recorded telephone conversation introduced at his trial.  _Id._, Exh. O.

not declaring a mistrial after "multiple instances of introduction of unanticipated allegations of prior bad acts," and that cumulative error had deprived him of a fair trial, in violation of his right to due process of law.  <u>Id.</u>, Exh. O. Additionally, Petitioner maintained there was insufficient evidence to convict him on one of the counts of conviction and that the trial court erred by denying his motion for a new trial.  <u>Id.</u>, Exh. O.

The Arizona Court of Appeals denied all of Petitioner's claims and affirmed his convictions and sentences in two opinions issued October 22, 2002.  <u>See</u> <u>Arizona v. Morrison</u>, 203 Ariz. 489, 56 P.3d 63; Answer, Exh. W.  In its published opinion the Arizona Court of Appeals held the trial court properly denied the motion to suppress the taped telephone conversation, even though the minor victim did not consent to the recording, because the trial court concluded the minor's mother vicariously consented to the recording on behalf of her daughter.  <u>See</u> <u>Morrison</u>, 203 Ariz. at 64-65, 56 P.3d at 490-91.  The Court of Appeals concluded the issue was one of statutory interpretation, stating:

> Both A.R.S. § 13-3005 and 18 U.S.C. § 2511 criminalize the unlawful interception of wire, electronic, and oral communications, but neither provides for the exclusion of evidence obtained unlawfully. **The federal constitution likewise does not require exclusion of the audiotape in this case because there was no state action.** [].

<u>Id.</u>, 203 Ariz. at 64, 56 P.3d at 490 (emphasis added).  The Arizona Court of Appeals' unpublished opinion denied

-6-

Petitioner's other claims for relief on the merits of those claims.   Response, Exh. W.

Petitioner sought review of his convictions and sentences by the Arizona Supreme Court.   <u>Id.</u>, Exh. X.   The Arizona Supreme Court denied review of the Court of Appeals' decision affirming the convictions and sentences on March 19, 2003.   <u>Id.</u>, Exh. Y.   Petitioner sought a writ of certiorari from the United States Supreme Court.   <u>Id.</u>, Exh. Z.   The Supreme Court denied certiorari on October 6, 2003.   <u>Id.</u>, Exh. AA; <u>Morrison v. Arizona</u>, 540 U.S. 867.

Petitioner filed an action for state post-conviction relief in the Arizona Superior Court on April 16, 2003.   <u>Id.</u>, Exh. BB.   Petitioner was appointed counsel to represent him in his action for post-conviction relief.   <u>Id.</u>, Exh. CC.   In his petition for post-conviction relief, Petitioner asserted his Fourth Amendment rights were violated because the police and prosecutor listened to the tape-recorded telephone conversation between Petitioner and a victim without first obtaining a warrant.   <u>Id.</u>, Exh. CC.   Petitioner also asserted his trial counsel was constitutionally ineffective for "not more fully arguing these constitutional issues..."   <u>Id.</u>, Exh. CC at 2. During oral argument on the merits of the Rule 32 petition, Petitioner's counsel clarified that he was only raising a Sixth Amendment ineffective assistance of claim, predicated on counsel's failure to argue a Fourth Amendment violation in the pretrial motion to suppress the recorded conversation.   <u>Id.</u>, Exh. DD at 12-13.   Petitioner's counsel acknowledged a *per se*

Fourth Amendment claim would be precluded.  _Id._, Exh. DD at 12-13.

However, Petitioner's post-conviction counsel vigorously argued the Fourth Amendment issue to the state court in both his brief and at oral argument, citing opinions of the United States Supreme Court regarding the right to privacy. _Id._, Exh. CC at 10-17 & Exh. DD.  Petitioner's post-conviction counsel argued Petitioner's trial counsel was ineffective for arguing the motion to suppress the tape primarily on the basis that it violated the Arizona Constitution.  _Id._, Exh. DD at 10-16.

The Arizona Superior Court denied the petition for post-conviction relief after oral argument, concluding Petitioner's trial counsel's performance was not deficient and that Petitioner was not prejudiced by the alleged deficiency. _Id._, Exh. DD.  Petitioner sought review of this decision by the Arizona Court of Appeals, which denied review in a decision issued November 22, 2005.  _Id._, Exh. FF.  Petitioner sought review of this decision by the Arizona Supreme Court, which denied review on July 25, 2006.  _Id._, Exh. HH.

Petitioner filed his federal habeas action on October 20, 2006.  Petitioner alleges he is entitled to relief because:

1. His Fourteenth Amendment right to due process was violated by the admission into evidence of the tape-recorded telephone conversation between Petitioner and a victim.

2. His right to due process was violated by the trial court's improper admission of expert testimony regarding child

-8-

sexual abuse accommodation syndrome.

3. The trial court violated his right to due process by improperly excluding evidence regarding the victims' motives and credibility.

4. He was denied his right to due process of law because the trial court did not declare a mistrial after testimonial references to prior bad acts.

5. His Fourth Amendment rights were violated by the tape-recorded conversation.

Respondents argue Petitioner did not properly exhaust all but one of his federal habeas claims in state court because the claims were either never fairly presented in state court or they were procedurally barred. Respondents contend any attempt to return to the state courts to exhaust a habeas claim would now be futile because the Petitioner's claims are procedurally barred by state law regarding waiver and preclusion. Respondents argue that, because the claims are procedurally defaulted and because Petitioner has not established either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of his claims, the Court may not grant relief on the merits of the claims.

**II Analysis**

**A. Exhaustion**

A state prisoner must "exhaust" a claim in the state courts before the District Court may grant federal habeas relief on the merits of the claim. See Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991); Castille v.

-9-

_Peoples_, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989).   To properly exhaust a claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner.   _See_, _e.g._, _Castille_, 489 U.S. at 351, 109 S. Ct. at 1060; _Rose v. Palmateer_, 395 F.3d 1108, 1110 (9th Cir.), _cert._ _denied_, 125 S. Ct. 2971 (2005).[3]

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.   _See_ _Swoopes v. Sublett_, 196 F.3d 1008, 1010 (9th Cir. 1999).   _See_ _also_ _Castillo v. McFadden_, 399 F.3d 993, 998 n.3 (9th Cir.), _cert._ _denied_, 126 S. Ct. 348 (2005).

To satisfy the "fair presentment" prong of the exhaustion requirement regarding a federal habeas claim, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." _Wilson v. Briley_, 243 F.3d 325, 327 (7th Cir. 2001).   _See_ _also_ _Kelly v. Small_, 315 F.3d 1063, 1066 (9th Cir. 2003).   In _Baldwin v. Reese_, the Supreme Court reiterated the purpose of exhaustion is to give the states the opportunity to pass upon and correct

---

[3] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief.   However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(2) (1994 & Supp. 2006).

alleged constitutional errors. <u>See</u> 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). The Court stated: "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." <u>Id.</u>

Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state constitutional right or state law, the federal habeas claim was not "fairly presented" to the state court. <u>See</u>, <u>e.g.</u>, <u>id.</u>, 541 U.S. at 33, 124 S. Ct. at 1351 ("The petition refers to provisions of the Federal Constitution in respect to other claims but not in respect to this one. The petition provides no citation of any case that might have alerted the court to the alleged federal nature of the claim."). A petitioner's passing reference to "broad constitutional principles, such as due process, equal protection, and the right to a fair trial" in their state court proceedings is not sufficient to establish a claim was fairly presented to the state courts as a federal constitutional claim. <u>Castillo</u>, 399 F.3d at 999 (internal citations omitted).

**B. Procedural default**

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2006). Because the exhaustion requirement

refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See id.; Castille, 489 U.S. at 351, 109 S. Ct. at 1060.  If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See Castille, 489 U.S. at 351-52, 109 S. Ct. at 1060; Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988).  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002) ("Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.").  "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or

-12-

actual innocence.'" <u>Ellis v. Armenakis</u>, 222 F.3d 627, 632 (9th Cir. 2000), <u>quoting</u> <u>Wells v. Maass</u>, 28 F.3d 1005, 1008 (9th Cir. 1994).

Because the Arizona rules of criminal procedure regarding timeliness, waiver, and preclusion bar Petitioner from now returning to state court to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted any claims not previously fairly presented to the state courts. See <u>Beaty v. Stewart</u>, 303 F.3d 975, 987 (9th Cir. 2002)**.**

> Federal courts hearing habeas petitions may not review state convictions, even for federal constitutional claims, if the state court judgment procedurally barring the petitioner's claims rests on an independent and adequate state law ground. []. Procedural default, a particular type of adequate and independent state ground, applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements**...**

<u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 665 (9th Cir. 2005) (internal citations and quotations omitted).

**C. Cause and prejudice**

Federal habeas relief based on a procedurally defaulted claim is barred unless the petitioner can demonstrate a miscarriage of justice, or cause and actual prejudice to excuse his default of the claim. See <u>Coleman</u>, 501 U.S. at 750-51, 111 S. Ct. at 2555-56;.

"Cause" is a legitimate excuse for the petitioner's procedural default and "prejudice" is actual harm resulting from

-13-

the alleged constitutional violation.  See Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  To demonstrate cause, a petitioner must show the existence of some external factor which impeded his efforts to comply with the state's procedural rules. See Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982).  See also Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th Cir. 1998).  Establishing prejudice requires Petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).  Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

Review of the merits of a procedurally defaulted habeas claim is also appropriate if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage

-14-

of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, Petitioner must establish by clear and convincing evidence that no reasonable juror could have found him guilty of the offenses charged. See Dretke v. Haley, 541 U.S. at 393, 124 S. Ct. at 1852; Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005). Additionally, even if Petitioner asserted a claim of actual innocence as excusing his procedural default of his habeas claims, federal habeas relief may not be granted on this basis absent a finding that a constitutional violation occurred in Petitioner's state criminal proceedings. See Dretke, 541 U.S. at 393-94, 124 S. Ct. at 1852; Herrera v. Collins, 506 U.S. 390, 400-01, 113 S. Ct. 853, 860-61 (1993).

### D. Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or one involving an unreasonable application of clearly established federal law, or unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d) (1994 & Supp. 2006).

-15-

> A state court's decision is "contrary to" our clearly established law if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

Mitchell v. Esparza, 540 U.S. 12, 14, 124 S. Ct. 7, 10 (2003) (internal citations and quotations omitted).

> Absent a direct conflict with Supreme Court authority, habeas relief is available only if the state court decision is factually or legally unreasonable in light of the evidence present in the state court proceeding. [] Notwithstanding, an unreasonable application of federal law is not the equivalent of an incorrect application of federal law. []

Moody v. Quarterman, 476 F.3d 260, 266 (5th Cir. 2007), petition for cert. filed, No. 06-11338 (May 14, 2007) (internal citations omitted).

When more than one state court has adjudicated a claim, the Court must analyze the last reasoned decision by a state court to determine if the state's denial of relief on the claim was clearly contrary to federal law. See Barker v. Fleming, 423 F.3d 1085, 1091-92 & n.3 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006). Additionally, United States Supreme Court holdings at the time of the state court's last reasoned decision are the source of "clearly established federal law" for the purpose of federal habeas review of state court decisions regarding federal constitutional claims. Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000); Barker, 423 F.3d at 1093.

-16-

When reviewing a habeas claim, the federal courts must afford great deference to the state court's rulings with regard to issues raised in the petitioner's federal habeas action.  See Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 359-60 (2002).  Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence.  See Miller-El v. Dretke, 545 U.S. 231, 125 S. Ct. 2317, 2325 (2005); Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006); Solis v. Garcia, 219 F.3d 922, 926 (9th Cir. 2000) ("The state court's factual findings are entitled to a presumption of correctness unless the petitioner rebuts the presumption with clear and convincing evidence.").  The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982).

Furthermore, a conclusion of an Arizona court regarding an issue of Arizona state law is entitled to deference by this Court.  See Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005); Hartman v. Summers, 120 F.3d 157, 161 (9th Cir. 1997). The Ninth Circuit Court of Appeals has stated: "If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court." Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005), citing Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886 (1975).

-17-

### D. Petitioner's claims for relief

**1. Petitioner contends his Fourteenth Amendment right to due process of law was violated by the admission into evidence of the tape-recorded telephone conversation between Petitioner and a victim.**

Respondents assert:

> Petitioner never presented this claim as a violation of his 14th Amendment due process rights. Rather, the allegation in Ground I was presented in state court as a violation of Title III of the Omnibus Crime Control and Safe Street Act (18 U.S.C. § 2510 et seq.), A.R.S. § 13-3005, and Article 2, §§ 4 and 8 of the Arizona Constitution (right to privacy). (Exhibits O, Q, X.) Petitioner raises the instant constitutional due process claim for the first time in federal court.

Response at 17-18.

In his direct appeal, Petitioner alleged the admission of the taped telephone conversation violated both state and federal statutes.  Petitioner did not explicitly assert, either in his direct appeal or in his action for post-conviction relief, that his federal constitutional right to due process of law was violated by the admission of the tape.  Defense counsel argued in Petitioner's direct appeal and in his motion for a new trial, *inter alia*, that the admission of a surreptitiously tape-recorded telephone conversation violated Arizona state statutes and the Arizona state constitution and federal statutes. Counsel asserted these sources of law provided Petitioner with more protection and provided a sounder basis for seeking relief than asserting Petitioner's rights pursuant to the Fourth Amendment to the United States Constitution.  See id., Exh. O & Q.

Replying to Respondents' assertion he did not properly exhaust this federal habeas claim in the state courts, Petitioner contends he exhausted this claim in the state courts by alleging the admission of the tape violated both state and federal law. Reply at 3. Petitioner maintains the state courts had "ample notice of the federal question that would be questioned." Id. Petitioner asserts: "if a question was presented it is considered exhausted." Id. at 4. Petitioner notes he is *pro se* and contends he should "not be held to the same standard as an attorney..." Id. at 5. Petitioner argues the state courts had notice the admission of the tape violated his federal right to due process because the state's "violation" of federal law, i.e., the Omnibus Crime Control and Safe Street Act, itself constitutes a violation of his right to due process of law. Id. at 6. Additionally, Petitioner contends his direct appeal "states violation of [Petitioner's] Fourteenth Amendment rights all through his direct appeal, and Supreme Court appeal." Id. at 7. Petitioner also argues any failure to exhaust his claims "should be excused considering the state had ample notice of his claims and returning to the state court would be futile." Id. at 8.

The due process claim stated as Ground I for federal habeas relief was not squarely presented to the Arizona state courts in Petitioner's direct appeal as a claim that Petitioner's right to federal due process was violated solely by the admission of this evidence. Accordingly, Petitioner did not fairly present this federal habeas claim to the state courts in

a procedurally correct manner.   See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 276 (1982); Castillo, 399 F.3d at 999;[4] Peterson v. Lampert, 319 F.3d 1153, 1157 (9th Cir. 2003); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000); Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) (concluding the petitioner must present the same legal theory, not just the same facts, to exhaust a claim).   Cf. Tigner v. Cockrell, 264 F.3d 521, 526-27 (5th Cir. 2001) (finding a federal habeas claim had not been fairly presented when the petitioner had objected to expert witness testimony on evidentiary grounds, not on constitutional grounds).   Compare Sanders v. Ryder, 342 F.3d 991, 999-1001 (9th Cir. 2003) (holding the petitioner had fairly presented an

---

[4] In Castillo, the Ninth Circuit stated:

Consistent with the recognition that state and federal courts are jointly responsible for interpreting and safeguarding constitutional guarantees, we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. []; Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). **In short, the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation.**

Mere general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish exhaustion. [] Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim.

399 F.3d at 999 (internal citations and quotations omitted and emphasis added).

ineffective assistance of counsel claim because he had cited both the Sixth Amendment and <u>Strickland</u>).

Petitioner has procedurally defaulted this claim by not fairly presenting it to the state courts in a procedurally correct manner. Petitioner has not shown cause nor prejudice regarding his procedural default of his claim that admission of the tape violated his right to due process of law. Because Petitioner has not established cause and prejudice regarding his procedural default of this due process claim, the Court may not grant relief on the merits of the claim. <u>See</u>, <u>e.g.</u>, <u>Bargas v. Burns</u>, 179 F.3d 1207, 1215 (9th Cir. 1999). Additionally, the claim may be denied on the merits. <u>See</u> <u>Barboza v. Bissonnette</u>, 434 F. Supp. 2d 25, 34-35 (D. Mass. 2006) (holding state court decisions denying the petitioner's motion to suppress tape recordings made by a minor victim's father, on the ground that they were made in violation of the federal wiretap statute, was not contrary to, or an unreasonable application of, clearly established federal law).

**2. Petitioner contends the trial court improperly admitted expert testimony regarding "child abuse accommodation syndrome" without first conducting a Frye hearing. Petitioner also alleges the trial court erred by excluding cross-examination of the expert witness as to his motive or bias for testifying on behalf of the prosecution. Petitioner asserts he was deprived of his right to due process of law by these errors.**

Respondents assert:

> ... Petitioner alleges that his 14th Amendment right to due process was violated when: (1) the trial court failed to conduct a Frye hearing regarding Mr. Robert Emerick's expert testimony (Ground II(a)); (2) Petitioner was not permitted to cross-examine Mr. Emerick until after the victim had

-21-

> testified (Ground II(b)); (3) the trial court
> precluded cross-examination of Mr. Emerick
> "with respect to his motive, bias, or
> prejudice" (Ground II(c)); and (4) because
> Mr. Emerick's testimony had "no application
> to the case" (Ground II(d)). [] But in state
> court, Petitioner never presented these
> claims as violations of his 14th Amendment
> due process rights.

Response at 14.   Respondents further state:

> The allegation in Ground II(a) was presented
> in state court as a violation of state
> evidentiary rules... Similarly, the
> allegation in Ground II(c) was presented as
> a violation of Petitioner's Sixth Amendment
> right to cross-examination. [] The
> allegations in Grounds II(b) and II(d) were
> never raised in state court under any legal
> theory, constitutional or otherwise. []
> Instead, Petitioner raises these
> constitutional due process claims for the
> first time in federal court.

<u>Id.</u> at 18-19.

Petitioner asserted in his direct appeal, citing various state supreme court cases discussing <u>Frye</u>, that allowing the testimony of the expert was improper because "child sexual abuse accommodation syndrome" was not generally accepted within the scientific community. Answer, Exh. O.  In the very last paragraph of this section of his appellate brief, Petitioner alleged that admitting the expert testimony without a limiting jury instruction violated his "right to a fair trial, guaranteed ... under both the United States Constitution, Fifth and Fourteenth Amendments," and the Arizona Constitution. Response, Exh. O at 32.  The Court concludes this habeas claim was fairly presented to the Arizona state courts.

However, the claim Petitioner's rights were violated because the trial court refused to conduct a Frye hearing is arguably not cognizable in the context of a petition seeking federal habeas relief because it raises an issue of state law, rather than federal constitutional law.

A state prisoner may obtain a writ of habeas corpus only upon a showing that he is being held in violation of the Constitution, laws, or treaties of the United States.  <u>See</u> 28 U.S.C. § 2254(a) (1994 & Supp. 2006); <u>Engle</u>, 456 U.S. at 119, 102 S. Ct. at 1567.  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991); <u>Beaty</u>, 303 F.3d at 986.

The United States Circuit Courts of Appeal have uniformly held that a state trial court's decision whether to admit evidence relating to scientific theories generally acceptable within the scientific community is a matter of state law.  <u>See</u> <u>Kinder v. Bowersox</u>, 272 F.3d 532, 545 (8th Cir. 2001) ("Daubert[5] does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution."); <u>Keller v. Larkins</u>, 251 F.3d 408, 419 (3d Cir. 2001) ("the admission of expert testimony in a state trial presents a question of state law unless, of course, the evidence violates due process or some other federal constitutional right"...).

---

[5] <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993).

In denying this type of habeas claim, the Seventh Circuit Court of Appeals has reasoned:

> The admissibility of evidence is generally a matter of state law. ... Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial. []. The standard, then, is not whether the testimony satisfied the Frye or Daubert tests-neither of which purports to set a constitutional floor on the admissibility of scientific evidence-but rather is whether the probative value of the state's evidence was so greatly outweighed by its prejudice to [the petitioner] that its admission denied him a fundamentally fair trial...

Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994).

To be entitled to habeas relief on a claim of erroneous admission of evidence, the petitioner must demonstrate the error had a substantial and injurious effect in determining the jury's verdict. See Fry v. Pliler, 127 S. Ct. 2321, 2325-27 (2007); Brecht v. Abramson, 507 U.S. 619, 638, 113 S. Ct. 1710, 1721-22 (1993); Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986);[6] Cummings v. Adams, 172 Fed. App. 188, 190

---

[6]

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors.... the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on

-24-

(9th Cir.), <u>cert.</u> <u>denied</u>, 127 S. Ct. 95 (2006); <u>Christian v.</u>
<u>Rhode</u>, 41 F.3d 461, 468 (9th Cir. 1994).

> Under this standard, an error is harmless
> unless the record review leaves the
> conscientious judge in grave doubt about the
> likely effect of an error on the jury's
> verdict ... i.e., that, in the judge's mind,
> the matter is so evenly balanced that he
> feels himself in virtual equipoise as to the
> harmlessness of the error.

<u>Padilla v. Terhune</u>, 309 F.3d 614, 621-22 (9th Cir. 2002)
(regarding erroneous admission of non-testifying co-defendant's
out-of-court statement) (internal citations and quotations
omitted).

The United States Supreme Court has instructed federal
courts applying <u>Brecht</u> to review the state court record as whole
and, if the court has "grave doubt" about the influence of the
offending evidence on the verdict, the court should treat the
error as having a substantial and injurious effect. <u>See</u> <u>O'Neal</u>
<u>v. McAninch</u>, 513 U.S. 432, 435, 115 S. Ct. 992, 994 (1995).
"Grave doubt" exists when the record as a whole reflects that
the matter is so evenly balanced that the court feels itself "in
virtual equipoise" regarding the errors harmlessness. <u>Id.</u>

As to whether the expert witness testimony regarding
child sexual abuse accommodation syndrome satisfied the Frye
test for admissibility, as the Arizona courts determined, the

_____

> material points, the extent of cross-examination
> otherwise permitted, and, of course, the overall
> strength of the prosecution's case.

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438
(1986).

Court concludes the admission of this evidence was not so arbitrary and fundamentally unfair that it violated federal due process. The expert witness testimony was offered primarily to establish the credibility of the victims. Petitioner and the victims testified at his trial and the victims' credibility was challenged by defense counsel through cross-examination. Petitioner took the stand, denied the charges against him, and asserted the victims were lying. The question for the jury was an issue of credibility, and the expert's testimony was obviously not a decisive factor in this regard because the jury found Petitioner innocent of some of the acts alleged by the victims.

Additionally, Petitioner contends his right to due process was violated by the trial court's postponing cross-examination of the expert witness until after one of the victims had testified and excluding questions to the expert witness with regard to his ex-wife, who was employed by Maricopa County, prevented Petitioner from showing bias.[7] Petitioner asserted in his direct appeal that postponing cross-examination of the expert witness until after one of the victims had testified violated his Sixth Amendment right to confront witnesses against him. Petitioner also argued the trial court's failure to allow questions to the expert witness with regard to his ex-wife, who was employed by Maricopa County, prevented him from showing bias. Accordingly, the Court concludes Petitioner has exhausted

---

[7] There was no contemporaneous objection to the bifurcation of the expert witness' testimony.

these claims.  However, the Arizona Court of Appeals did not err in concluding Petitioner's federal constitutional rights were not violated in this regard.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S. Ct. 2142, 2147 (1986) (internal citations and quotations omitted).

> While cross-examination is the chief means by which criminal defendants may exercise their right to confront witnesses, [], trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.[].

<u>King v. Trippett</u>, 192 F.3d 517, 524 (6th Cir. 1999).

As noted *supra*, Petitioner was afforded a meaningful opportunity to present a complete defense, including the opportunity to meaningfully challenge the victims' credibility. Additionally, these assignments of error did not render Petitioner's trial fundamentally unfair.

To the extent that Petitioner exhausted his claim that failure to conduct a Frye hearing violated his right to due process, Petitioner is not entitled to habeas relief on this claim because the claim raises an issue of Arizona evidentiary law.  The admission of the evidence does not leave the Court

-27-

with "grave doubt" that the outcome of the proceedings would have been different absent the admission of the expert testimony. Additionally, Petitioner was not deprived of his right to due process by the trial court's decision to exclude cross-examination of the expert witness regarding his ex-wife's employment. Ultimately, the information regarding the ex-wife's employment was presented to the jury upon redirect examination by the government. Accordingly, Petitioner is not entitled to federal habeas relief on the basis of the claims stated as Ground II for relief.

**3. Petitioner contends the trial court improperly excluded evidence regarding the victims' bias and credibility, in violation of his Fourteenth Amendment right to due process.**

Petitioner contends the trial court erred by not allowing the admission at his trial of: (1) a track from a musical CD, which Petitioner claims would have convinced the jury the content of the tape-recorded telephone conversation was merely Petitioner and the victim mimicking this song; (2) a statement by a police detective regarding a victim's father's efforts to have Petitioner investigated for abuse of his daughter; (3) a taped conversation between a victim's father and the victim's mother, who were divorced; (4) a diary kept by one of the victims regarding a "plot" to entrap an adult male into a compromising situation; (5) a letter from one victim to the other.

Respondents do not argue this claim was not properly exhausted in the Arizona state courts. Respondents argue Petitioner is not entitled to relief on this claim because the

"state courts' findings were neither contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the holdings of the United States Supreme Court." Response at 28. Petitioner responds that the state court had "no justifiable reason" to preclude the evidence as cumulative. Reply at 12.

The Arizona trial court precluded the evidence referenced by Petitioner primarily because it was cumulative, pursuant to Rule 403, Arizona Rules of Evidence. This rule provides "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." On direct appeal the Arizona Court of Appeals concluded the trial court did not err in excluding the evidence because it was cumulative and, in some instances, inadmissible hearsay. Answer, Exh. W.

As noted *supra*, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane, 476 U.S. at 690, 106 S. Ct. at 2146. A defendant's due process rights are violated by the exclusion of evidence if the precluded evidence, if introduced, would have created "a reasonable doubt that did not exist without the evidence." Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997) (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 868, 102 S. Ct. 3440, 3447 (1982)); Patton v. Mullin, 425 F.3d 788, 798 (10th Cir. 2005). However, the right to present

evidence in one's defense is not unlimited.  State rules which operate to exclude evidence from criminal trials do not abridge a defendant's right to present a complete defense to the charges against him if the rules are not arbitrary or "disproportionate to the purposes they are designed to serve." <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998) (internal citations and quotations omitted). "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973).

Nonetheless, the Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." <u>Scheffer</u>, 523 U.S. at 308, 118 S. Ct. 1261. <u>See also</u> <u>Greene v. Lambert</u>, 288 F.3d 1081, 1090 (9th Cir. 2002).

The Arizona courts' conclusions that the evidence was cumulative and that Petitioner's right to due process was not violated by the exclusion of the evidence were not clearly contrary to established federal law. <u>See</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319, 126 S. Ct. 1727, 1732 (2006); <u>Crane</u>, 476 U.S. at 689–90, 106 S. Ct. at 2146; <u>Van Arsdall</u>, 475 U.S. at 679, 106 S. Ct. at 1435.

> In <u>Scheffer</u>, the Court revisited the issue of balancing the defendant's right to present a defense against the state's right to prevent unreliable evidence. <u>Scheffer</u> held that a per se ban on polygraph evidence did not

constrain unconstitutionally a defendant's right to present exculpatory evidence. [] Scheffer distinguished Washington and Rock. The Court noted that the exclusions of evidence in those cases "significantly undermined fundamental elements of the defendant's defense." Id. at 315, 118 S. Ct. 1261. Specifically, Scheffer held that barring the admission of an allegedly exculpatory polygraph test did not do so, [], and it contrasted the polygraph limitation with the preclusions on the testimony of a percipient witness and the testimony of the defendant, respectively, in Washington and Rock, [] The distinction between Washington, Rock, and this case, on the one hand, and Scheffer, on the other, is this: In the former, a trial court prohibited presentation of the substantive content of a defendant's testimony or a percipient witness' testimony, [], while in the latter a trial court prohibited something much less direct, and much more within the jury's province -- third-party evidence of the truthfulness of the substantive content of the defendant's testimony, []. ...

Greene, 288 F.3d at 1091-92. See also Gill v. Ayers, 342 F.3d 911, 922 (9th Cir. 2003) (concluding that, where the precluded testimony was the defendant's only defense, the preclusion of the testimony violated the defendant's right to due process of law because it had a substantial and injurious effect in determining the verdict).

**4. Petitioner alleges he was denied his right to due process because the trial court did not declare a mistrial after references to other, uncharged bad acts.**

Respondents assert:

In his opening brief to the Arizona Court of Appeals [on direct appeal],[] Petitioner did not re-assert a federal constitutional due process violation with respect to these claims. (Exhibit O.) Nor did he raise any constitutional violation to the Arizona Supreme Court in his petition for review.

-31-

1
2
3
4
                     (Exhibit X.) Instead, the allegations were
                     presented on direct appeal only as a
                     violation of Arizona Rules of Criminal
                     Procedure 15.1 and Arizona Rule of Evidence
                     404(b). (Exhibit O at 45-49.) Thus, Ground
                     IV, as it pertains to these factual bases,
                     was not properly exhausted in state court.

5 Response at 22.

6         In his direct appeal, Petitioner asserted the trial

7 court abused its discretion by failing to declare a mistrial

8 after "multiple instances of introduction of unanticipated

9 allegations of prior bad acts."   Answer, Exh. O at 45.

10 Petitioner asserted the victims testified at Petitioner's trial

11 as to alleged instances of abuse which were not charged or

12 previously alleged.  <u>Id.</u>, Exh. O.   Petitioner also asserted a

13 mistrial should have been declared after a witness offered

14 hearsay evidence regarding a statement made by one of the

15 victims.  <u>Id.</u>, Exh. O.  In support of this argument, Petitioner

16 cited to Arizona state court opinions and the Arizona Rules of

17 Criminal Procedure.  <u>See id.</u>, Exh. O at 45-49.  Under a separate

18 heading in his appellate brief, Petitioner summarily stated the

19 Due Process Clause of the United States Constitution required

20 Petitioner receive a "fair trial," which he did not receive

21 because of the trial court's cumulative errors.   <u>Id.</u>, Exh. O at

22 49.

23        The Court concludes Petitioner did not fairly present

24 this federal habeas claim to the Arizona state courts.

25 Petitioner did not squarely assert his right to due process was

26 violated solely by the trial court's failure to declare a

27 mistrial after the testimony of alleged uncharged bad acts.  <u>See</u>

28

Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (concluding a habeas petition may not "transform a state law issue into a federal one merely by asserting a due process violation."); Beard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1999) ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal petition."); Joubert, 75 F.3d at 1240 (holding the petitioner must present the same legal theory, not just the same facts, to exhaust his habeas claim).

Petitioner has procedurally defaulted this claim by not fairly presenting it to the state courts in a procedurally correct manner. Petitioner has not shown cause nor prejudice regarding his procedural default of his claim that admission of this evidence violated his right to due process of law. Because Petitioner has not established cause and prejudice regarding his procedural default of this due process claim, the Court may not grant relief on the merits of the claim.

Additionally, the claim may be denied on the merits because the "admitted" evidence, i.e., the failure to declare a mistrial based on the evidence, did not deny Petitioner a fundamentally fair trial. See Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."); Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001) (stating in reference to habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary

-33-

rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.").

**5. Petitioner contends his Fourth Amendment rights were violated by the admission into evidence of the tape-recorded telephone conversation.**

Petitioner asserts the fact that the police listened to the tape recording of the telephone conversation without first obtaining a search warrant constituted an unreasonable search, in violation of his Fourth Amendment rights. Petitioner's Fourth Amendment claim is not cognizable in an action for federal habeas relief because he had the opportunity to litigate this claim in the state courts. See Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976).[8] A claim that the petitioner's Fourth Amendment rights were violated does not provide a basis for granting federal habeas relief from a state

---

[8] In his direct appeal Petitioner asserted admitting the tape recording into evidence violated his rights pursuant to both state and federal statutes. Response, Exh. O. Petitioner argued, *inter alia*, that admission of the tape-recorded conversation violated 18 U.S.C. §§ 2510-2521, which criminalizes the interception of an electronic conversation and provides no improperly intercepted conversation may be admitted into evidence in a criminal proceeding.

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515 (2000 & Supp. 2007).

-34-

conviction if the petitioner had the opportunity to fully and fairly litigate the claim in the state courts.  <u>See</u>, <u>e.g.</u>, <u>Woolery v. Arave</u>, 8 F.3d 1325, 1326-27 (9th Cir. 1993) (concluding that, unless the habeas petitioner made an affirmative showing that the state denied him a full and fair opportunity to litigate his Fourth Amendment claim, <u>Stone</u> requires dismissal of the claim); <u>Patterson v. Runnels</u>, 288 F. Supp. 2d 1092, 1097-98 (C.D. Cal. 2003).  The relevant inquiry is whether the petitioner was afforded a full and fair hearing of his claim in the state court, not whether the state court reached a correct decision regarding the legitimacy of the "search."  <u>See</u> <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."); <u>Siripongs v. Calderon</u>, 35 F.3d 1308, 1321 (9th Cir. 1994) (noting that a habeas petitioner's Fourth Amendment "argument goes not to the fullness and fairness of his opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which <u>Stone v. Powell</u> makes irrelevant").

Petitioner alleges he "is allowed to bring up a claim of ineffective assistance of counsel based on deficient representation in litigating a Fourth Amendment issue."  Reply at 11.  In Petitioner's action for post-conviction relief, Petitioner's counsel vigorously argued Petitioner's Fourth Amendment right to privacy was violated by the admission of the tape recording and, accordingly, that Petitioner's trial

1  counsel's performance was deficient and Petitioner was

2  prejudiced by the failure to raise this claim.

3          The Arizona state courts concluded, after a hearing on

4  this assertion, that Petitioner's counsel was not ineffective

5  for failing to argue the admission of the tape violated his

6  Fourth Amendment rights because the argument was unlikely to

7  succeed.  The Arizona Court of Appeals concluded, as a matter of

8  fact, that counsel had consciously decided to argue the tape

9  recording should be suppressed on grounds which were more

10 beneficial to Petitioner than the Fourth Amendment, as a matter

11 of trial strategy.

12         The Arizona Court of Appeals' decision that

13 Petitioner's right to the effective assistance of counsel was

14 not violated was not clearly contrary to established federal

15 law.  To state a claim for ineffective assistance of counsel, a

16 petitioner must show that his attorney's performance was

17 deficient and that the deficiency prejudiced the petitioner's

18 defense.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104

19 S. Ct. 2052, 2064 (1984).  The petitioner must overcome the

20 strong presumption that counsel's conduct was within the range

21 of reasonable professional assistance required of attorneys in

22 that circumstance.  See <u>id.</u>, 466 U.S. at 687, 104 S. Ct. at

23 2064; <u>Allen v. Woodford</u>, 395 F.3d 979, 1005 (9th Cir. 2004),

24 <u>cert. denied</u>, 126 S. Ct. 134 (2005).

25         As noted *supra*, the federal district courts are

26 required to examine a state court's ruling with regard to an

27 issue raised in a federal habeas petition with great deference.

28                              -36-

See Woodford, 537 U.S. at 24, 123 S. Ct. at 359-60.  With regard to claims of ineffective assistance of counsel, "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  An unreasonable application of federal law is different from an incorrect application of federal law."  Id., 537 U.S. at 25, 123 S. Ct. at 360 (internal quotations omitted).

To succeed on an ineffective assistance of counsel claim premised on his counsel's failure to raise an argument, the petitioner must establish that the argument was likely to be successful, in order to prove that he was prejudiced by his counsel's failure to raise the argument.  See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) ("trial counsel cannot have been ineffective for failing to raise a meritless objection"); Van Tran v. Lindsey, 212 F.3d 1143, 1156 (9th Cir. 2000).  A defendant has no constitutional right to compel counsel to raise particular claims if counsel, as a matter of professional judgment, decides not to present those issues.  See Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983) (declining to promulgate "a per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed").

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

-37-

perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." <u>Id.</u>, 466 U.S. at 690-91, 104 S. Ct. at 2066.

> Deficient performance alone, however, is not enough to render counsel's representation constitutionally ineffective. [The petitioner] must also establish prejudice, by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

<u>Turner v. Calderon</u>, 281 F.3d 851, 873 (9th Cir. 2002), <u>quoting</u> <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

The Court's thorough review of the extensive record submitted by Respondents indicates that trial counsel vigorously defended Petitioner, and that counsel's performance was not deficient. Petitioner's trial counsel competently argued a motion to suppress the tape based on both federal and state law. Counsel made a strategic decision that Petitioner's interests were better served by arguing admission of the tape violated Petitioner's rights pursuant to federal statutes and the Arizona state constitution, which provides broader privacy protection to criminal defendants than the Fourth Amendment to the United States Constitution. Accordingly, the Arizona Court of Appeals' decision that Petitioner was not deprived of the effective assistance of counsel was not an unreasonable application of federal law nor clearly contrary to federal law and Petitioner

is not entitled to habeas relief based on this claim.

### III Conclusion

Petitioner procedurally defaulted some of his federal habeas claims in the Arizona state courts by not presenting them to the Arizona Court of Appeals in a procedurally correct manner.  Other than the fact that he is now *pro se*, Petitioner does not allege cause for, nor prejudice arising from his procedural default of these claims.  Because Petitioner has not shown cause for nor prejudice arising from his procedural default of some of his federal habeas claims, the Court may not grant relief on the merits of those claims.  Additionally, with regard to the claims which were exhausted in the state courts, the state courts' decisions regarding the claims were not clearly contrary to, nor an unreasonable application of, federal law and, accordingly, Petitioner is not entitled to relief on those claims.

**IT IS THEREFORE RECOMMENDED** that Mr. Morrison's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 27th day of June, 2007.

_____
Mark E. Aspey
United States Magistrate Judge